IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


DALE CHASE,

                  Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

No. 3:10-CV-1063-HZ

OPINION & ORDER


Tim D. Wilborn
WILBORN LAW OFFICE, P.C.
Tim Wilborn, Attorney at Law
Oregon City, OR 97045

        Attorney for Plaintiff

Adrian L. Brown
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

Daphne Banay
SOCIAL SECURITY ADMINISTRATION

1 - OPINION & ORDER

701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Dale Chase ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"),

42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social

Security (the "Commissioner"). The Commissioner found Plaintiff not disabled and denied his

application for Title II Disability Insurance Benefits ("DIB"), 42 U.S.C. §§ 401-34. For the

reasons set forth below, the Commissioner's decision is REVERSED and this action is

REMANDED for the immediate calculation and award of benefits, and the Commissioner's

motion to remand (doc. #34) is DENIED

## PROCEDURAL BACKGROUND

     On August 7, 2000, administrative law judge ("ALJ") Dan Hyatt ("ALJ Hyatt") found

Plaintiff disabled for a closed period from November 1, 1997, to November 1, 1999. R. at 780-

91. On September 5, 2000, Plaintiff filed for DIB, alleging a disability onset date of November

19, 1999. R. at 848. Plaintiff's September 5, 2000, application was denied and he requested a

hearing before an ALJ of the Social Security Administration ("SSA"). Two separate hearings

were held before ALJ John J. Madden, Jr. (hereinafter, the "ALJ") on October 7, 2003, and

February 10, 2004. The ALJ issued an opinion dated September 24, 2004, finding Plaintiff not

disabled. R. at 15, 24. Plaintiff requested review of the ALJ's decision, but the Appeals Council

denied Plaintiff's request on January 23, 2006. R. at 6.

     Plaintiff subsequently filed a civil action with the United States District Court for the

District of Oregon. Based on a stipulation by the parties, the Honorable Malcolm J. Marsh

reversed and remanded the Commissioner's decision for further administrative proceedings on

2 - OPINION & ORDER

November 19, 2007, specifically instructing the ALJ to "[r]eevaluate Plaintiff's condition . . .

from November 1999 through Plaintiff's date last insured [of] March 31, 2005, without applying

the presumption of continuing nondisability . . . ."  R. at 864-65.  On remand, a third hearing was

held on June 5, 2008.  R. at 1325.  On August 13, 2008, the ALJ issued a second opinion, again

finding Plaintiff not disabled .  R. at 860.  Plaintiff requested a review of the ALJ's decision, but

the Appeals Council declined to grant Plaintiff's request on July 12, 2010, thus making the

ALJ's August 13, 2008, decision the final decision of the Commissioner.  R. at 826.  This appeal

followed.

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence of the record.

Therefore, the evidence will not be repeated here except as necessary to explain my decision.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  Disability claims are evaluated according to a five-step procedure.  See Valentine

v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).  The claimant bears the ultimate

burden of proving disability.  Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 141; <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If so, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one of the sequential proceedings, the ALJ found Plaintiff had not engaged in substantial gainful activity from February 19, 2002, his alleged disability onset date, through his date last insured, March 31, 2005.  R. at 851, Finding 2.  At step two, the ALJ found Plaintiff had the "following severe impairments: organic mental disorder and degenerative disc disease of the lumbar spine."  R. at 851, Finding 3.  At step three, the ALJ found Plaintiff's impairments did

not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. at 852, Finding 4.

At step four, the ALJ found Plaintiff was not able to perform past relevant work.  R. at 858, Finding 6.  At step five, the ALJ found Plaintiff was not disabled because there were jobs he could perform existing in significant numbers in the national economy.  R. at 859, Finding 10.

## STANDARD OF REVIEW

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's."  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability.  Howard, 782 F.2d at 1486.  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

/ / /

**DISCUSSION**

Plaintiff makes the following assignments of error by the ALJ: (1) the ALJ improperly rejected his disability rating as determined by the Veteran's Administration ("VA"); (2) the ALJ improperly rejected the opinion of Dr. William Trueblood, Ph.D., Plaintiff's examining psychologist; (3) the ALJ improperly rejected Plaintiff's subjective statements; (4) the ALJ improperly rejected the lay witness statements of Plaintiff's wife ("Mrs. Chase") and mother-in-law, Mary Cline ("Mrs. Cline"); and (5) the ALJ's vocational hypothetical to the vocational expert ("VE") was invalid.

The Commissioner concedes that despite Judge Marsh's November 19, 2007, remand order instructing the ALJ to "[r]eevaluate Plaintiff's condition . . . from November 1999 through Plaintiff's date last insured [of] March 31, 2005," R. at 864, the ALJ only considered evidence from February 19, 2002, through March 31, 2005. Def.'s Resp. Br. ("Resp."), pp. 7-8. Based on the ALJ's errors, the Commissioner urges this court to issue an order requiring a different ALJ to re-evaluate Plaintiff's condition from November 19, 1999, through March 31, 2005, and to reconsider Plaintiff's subjective complaints and RFC. The Commissioner, however, asks this court to affirm the ALJ's decisions rejecting: (1) the VA's disability rating, (2) Dr. Trueblood's medical opinion, and (3) the lay witness statements by Mrs. Chase and Mrs. Cline. Id. at 9.

For the reasons that follow, I conclude the ALJ's rejection of the VA's disability rating, Dr. Trueblood's opinion, and the lay witness statements was legally improper.

**I. The VA's Disability Rating**

The Commissioner asserts the ALJ's rejection of the VA's disability rating was proper because the ALJ relied on evidence the VA did not have. The Commissioner further contends that despite Plaintiff's argument to the contrary, the ALJ acted in accordance with Judge Marsh's

November 19, 2007, order that he not apply the presumption of continuing nondisability when determining whether Plaintiff was disabled.  The Commissioner's arguments are not well-taken.

The Ninth Circuit has previously stated that "an ALJ must ordinarily give great weight to a VA determination of disability[,]" but may "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  On January 26, 1999, the VA determined Plaintiff is "70 percent disabled [due to] major depression with mood disorder and cognitive limitation secondary to a central nervous system injury" and is "unable to secure and follow a substantially gainful occupation."  R. at 129.  The Commissioner contends the ALJ properly rejected the VA's determination, relying on the following statement by the ALJ:

> [T]he . . . VA determination was made at a time when the claimant was considered disabled under the Social Security regulations, and that the VA has not reviewed the ongoing medical evidence for the period at issue, during which the claimant stipulated to an ability to sustain simple work activity, and which is supported by the evidence, as discussed above.

R. at 858 (emphasis added).

It is undisputed the ALJ stated in his August 13, 2008, opinion that he did not apply a "presumption of continuing nondisability" when determining whether Plaintiff was disabled.  R. at 849.  Contrary to the ALJ's statement, however, the ALJ did in fact apply the presumption of continuing nondisability when determining whether or not Plaintiff was disabled.  As the record demonstrates, the ALJ explicitly relied on the presumption that the VA did not review medical evidence during the period which Plaintiff had stipulated to an ability to sustain simple work activity.  R. at 858.  The ALJ's underlying reason for rejecting the VA's disability rating clearly deviated from Judge Marsh's November 19, 2007, remand order and thus was not a persuasive, specific,

or valid reason for rejecting the VA's determination.  As such, the ALJ's rejection of the

VA's disability rating cannot be sustained in this instance.  See Sullivan v. Hudson, 490

U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent

administrative proceedings is itself legal error, subject to reversal on further judicial

review.").

## II. The Opinion of William Trueblood, Ph.D.

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Trueblood.  The

Commissioner responds the ALJ properly rejected Dr. Trueblood's opinion, relying on the

following portion of the ALJ's decision:

> [T]here is no indication the claimant has required follow-up cognitive/mental
> function evaluations by a treating psychologist or psychiatrist.  Furthermore, there
> is no evidence of a treating source noting any further decline in the claimant's
> cognitive function.   In light of this, and considering that there is nothing
> inconsistent between Dr. Trueblood's clinical findings and the uncontroverted
> opinions of the state agency psychological consultants, the undersigned finds
> there is little objective evidence of a further cognitive decline.

R. at 856.

The Commissioner also contends the ALJ properly rejected Dr. Trueblood's opinion

because: (1) Dr. Trueblood's diagnosis of dementia is not supported by the record as a whole and

is inconsistent with his clinical findings; (2) Dr. Trueblood noted Plaintiff exhibited an approach

to the testing that can be due to noncooperation or malingering, but gave the Plaintiff the benefit

of the doubt; and (3) Dr. Trueblood assessed Plaintiff as having mild to moderate impairment

and "contrary to the Appeals Council's notes, states that [Plaintiff's] mood disorder does not

appear to involve the marked ongoing depression that [Plaintiff] experienced several years ago."

R. at 856 (emphasis in original).  The Commissioner contends Plaintiff merely disagrees with the

ALJ's rejection of Dr. Trueblood's opinion based on his own interpretation and weighing of the evidence. I disagree with the Commissioner's contentions.

Noted above, Dr. Trueblood was Plaintiff's examining psychologist. "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician. . . . [T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (citations omitted). Here, the Commissioner agrees the ALJ could only reject Dr. Trueblood's opinion for clear and convincing reasons.

The record shows Dr. Trueblood examined Plaintiff on two separate occasions. On February 5, 2001, Dr. Trueblood performed a mental status exam of Plaintiff. R. at 259. Dr. Trueblood stated Plaintiff's "[f]und of general knowledge appear[ed] to be somewhat low" and observed Plaintiff's "performances were impaired on a task of memory, as well as tasks pertaining to calculations and concentration . . . ." R. at 260. He also documented Plaintiff's "cognitive screening results [were] suggestive of . . . [an] acquired cognitive impairment." R. at 260. Dr. Trueblood ultimately diagnosed Plaintiff with dementia, "[o]rganic mood disorder, mild," "[h]erpes encephalitis," and "[s]everity of psychosocial stressors . . . severe unemployed, mild social isolation." R. at 261. He also assigned Plaintiff with a Global Assessment of Functioning ("GAF") score of 49.[1] R. at 261. Dr. Trueblood expressly documented that he did

---

[1] The GAF is a scale from 1-100, in ten point increments, used by clinicians to determine the individual's current overall functioning. See Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed. Text Revision ("DSM-IV-TR"), p. 34. A GAF between 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See id. (emphasis in original).

"not believe [Plaintiff] malingered" during his evaluation, but noted that he was "not completely sure about this." R. at 261.

Dr. Trueblood examined Plaintiff again on January 3, 2002, performing a second mental status exam. R. at 463. Dr. Trueblood concluded that Plaintiff had "a substantial degree of acquired neuropsychological and neurobehavioral impairment," Plaintiff's deficit in learning and memory skills was "moderately impaired," and Plaintiff had "milder impairment in problem solving and . . . attention." R. at 468. Dr. Trueblood concluded Plaintiff's "depression and anxiety" were "neurobehavioral consequences" of Plaintiff's encephalitis. R. at 468. He further concluded that Plaintiff's encephalitis was "probably the primary cause of his neuropsychological and neurobehavioral impairment." R. at 468. Dr. Trueblood ultimately assessed Plaintiff with a GAF score of 48 and diagnosed Plaintiff with, among other things, "organic mood disorder," which he opined involved a "susceptibility to mood swings and depression, anxiety, and anger in reaction to stress." R. at 468-69. Dr. Trueblood went on to conclude that Plaintiff exhibited "low" stress tolerance, which he noted is common with those with "significant brain impairment." R. at 468. Dr. Trueblood also explicitly stated that Plaintiff's "cognitive/neurobehavioral impairment" was "mild to moderate," "learning and memory functioning" was "moderately impaired," and "mood disorder" and "limitation in stress tolerance" were "moderate." R. at 468. Notably, Dr. Trueblood stated that if he were using the classifications for "Disability Determination," he would rate Plaintiff's neuropsychological impairment and mood disorder as "marked." R. at 468. Dr. Trueblood opined that in his view, the "balance of evidence" supported the conclusion that Plaintiff's "cooperation and effort were appropriate" and that any appearance of noncooperation or malingering by Plaintiff was better

explained by Plaintiff's "frustration" with performing the tasks presented rather than "any attempt to circumvent" them.  R. at 468-69.

Based on the record before me, I conclude the ALJ failed to provide clear and convincing reasons supported by substantial evidence in the record when rejecting Dr. Trueblood's opinion. First, the Commissioner cites no authority, and I find none, standing for the proposition that an examining psychologist's opinion may be rejected simply because no treating psychiatrist or psychologist required "follow-up" evaluations or when the record is absent a treating source's opinion noting "further decline" in the claimant's functioning.

Second, the Commissioner fails to cite any specific portion of the record, let alone any portion of the record whatsoever, supporting the ALJ's determination that Dr. Trueblood's clinical findings were not inconsistent with the opinions of the state agency psychological consultants.  R. at 856.  Nothing in the record demonstrates the opinions of the state agency psychological consultants were not inconsistent with Dr. Trueblood's opinion.  Indeed, the Commissioner fails to point to any evidence showing that the state agency psychological consultants rated Plaintiff with "marked" neuropsychological impairments and mood disorder, assessed Plaintiff as having GAF scores of 48 and 49, or otherwise indicated Plaintiff is "unable to keep a job."  See DSM-IV-TR, p. 34 (a GAF between 41-50 indicates claimant is "unable to keep a job").

Third, contrary to the ALJ's conclusion, Dr. Trueblood's diagnosis of dementia is supported by the record as a whole and is consistent with his clinical findings.  Here, Dr. Trueblood concluded Plaintiff's memory functioning was impaired, stated Plaintiff had "significant brain impairment," and opined Plaintiff suffered from "mild to moderate" "cognitive/neurobehavioral impairment."  R. at 260-61, 468.  Consistent with Dr. Trueblood's

diagnosis of dementia, the VA concluded Plaintiff suffered from a "cognitive limitation." R. at 129. Also consistent with Dr. Trueblood's opinion, psychiatric nurse practitioner Linda J. Gillins assessed Plaintiff with "dementia secondary to encephalitis" and expressly stated Plaintiff had "significant problems with short-term memory, word finding, concentration, and mood lability." R. at 401.

Fourth, the ALJ appears to have rejected Dr. Trueblood's opinion on the basis that Plaintiff "exhibited an approach to the testing that can be due to noncooperation or malingering." R. at 856. As noted above, however, Dr. Trueblood expressly stated that although it appeared Plaintiff was not cooperating or malingering, a better explanation was that Plaintiff was frustrated with the tasks assigned to him during his examination. R. at 468-69.

Fifth, the ALJ rejected Dr. Trueblood's opinion because Dr. Trueblood stated Plaintiff's mood disorder did not "appear to involve the marked ongoing depression that [Plaintiff] experienced several years ago." R. at 856. Dr. Trueblood's observation does not amount to a legally sufficient reason to reject Dr. Trueblood's opinion, especially when considering that Dr. Trueblood himself continued to diagnose Plaintiff with "organic mood disorder." R. at 468.

Finally, the ALJ rejected Dr. Trueblood's opinion on the basis that there was "little objective evidence of a further cognitive decline." R. at 856. The Commissioner provides no explanation, and I find none, as to why Dr. Trueblood's opinion could only withstand scrutiny if there was objective evidence demonstrating "further cognitive decline."

The ALJ's reasons for rejecting Dr. Trueblood's opinion were not clear and convincing or supported by substantial evidence in the record. Accordingly, the ALJ's rejection of Dr. Trueblood's opinion cannot be sustained. [2]

---

[2] The ALJ also rejected Dr. Trueblood's opinion because Dr. Trueblood assigned Plaintiff with a "GAF score of 48 to 49," stating "a GAF score is not an accurate appraisal of a person's

### III. Plaintiff's Subjective Statements

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting his subjective statements. The Commissioner does not respond to Plaintiff's argument and simply urges this court to remand this action and issue an order requiring the next ALJ to "further consider Plaintiff's subjective complaints." Resp., p. 9.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir.1996). At the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80

---

functional capabilities." R. at 856. The Commissioner concedes this was an improper reason for rejecting Dr. Trueblood's opinion.

F.3d at 1284.  The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  Id.  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2005).

Because the ALJ made no affirmative finding of malingering and because the record contains objective evidence of impairments that could reasonably be found to cause Plaintiff's alleged symptoms, the ALJ was required to provide clear and convincing reasons to reject Plaintiff's complaints.  See Lingenfelter, 504 F.3d at 1036.  Apart from the fact that the ALJ failed to consider the evidence from November 1999 through March 31, 2005, as required by Judge Marsh's November 19, 2007, order, the Commissioner fails to articulate any reason as to why further proceedings are necessary insofar as they relate to Plaintiff's subjective testimony. The decision whether to remand for further proceedings is within the district court's discretion and turns upon the likely utility of the proceedings.  Harman v. Apfel, 211 F.3d 1172, 1175-79 (9th Cir. 2000).  I agree with the parties that the ALJ erred by only considering the evidence from February 19, 2002, through March 31, 2005, and not November 1999 through March 31, 2005.  I, however, disagree with the Commissioner's bald assertion that by itself such an error requires a remand for further proceedings.  As discussed below, remand for additional proceedings is not the appropriate remedy in this instance because there are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  See id. at 1179.

/ / /

**A. Plaintiff's Cognitive and Mood Problems**

Although the Commissioner fails to address whether the ALJ improperly rejected Plaintiff's subjective complaints, I find it worth noting that based on my review of the record, the ALJ erroneously rejected Plaintiff's subjective complaints concerning his cognitive and mood problems.  Here, the ALJ found Plaintiff's assertions regarding his cognitive and mood problems were not credible because Plaintiff was "able to get along with others" and was "able to control his feels [sic] of frustration and anger, such that he d[id] not direct his feelings at others."  R. at 855.   The ALJ further found that Plaintiff was not credible because he was "able to cope with his ailments," Plaintiff and his wife "demonstrated an ability to work in cooperation . . . in maintaining an independent life for well over a decade," and Mrs. Chase noted Plaintiff handled stress "pretty well."  R. at 855.

When read as a whole, the record does not support the ALJ's rejection of Plaintiff's allegations concerning his cognitive and mood problems.  Contrary to the ALJ's finding, the record demonstrates Plaintiff is unable to control his frustration and anger.  Plaintiff testified that he has anxiety every day and that his anxiety causes him to become "very nervous" which in turn, causes him to become very angry and frustrated.  R. at 62, 1338.  Plaintiff indicated he gets anxiety attacks very easily and testified that he even had an anxiety attack while driving to the October 7, 2003, hearing.  R. at 62, 932, 1338.  That Plaintiff does not direct his feelings at others does not render Plaintiff's testimony not credible or otherwise demonstrate Plaintiff is able to control his anger and frustration.  R. at 62, 73, 1338, 1350.

The ALJ's finding that Plaintiff was able "to get along with others" is also unsupported by the record.  Mrs. Chase testified that due to Plaintiff's cognitive and mood problems, Plaintiff tended to isolate himself, did not visit any friends, and did not socialize.  R. at 60, 71, 1349.

With respect to Plaintiff and his wife's ability to maintain an "independent life," such a finding does not necessarily lead to the conclusion that Plaintiff's subjective statements are not credible. In fact, Plaintiff's dependence on his wife to maintain an "independent life" bolsters Plaintiff's allegations that he is disabled.  The record shows Plaintiff depends on his wife for a number of things, including being reminded about "grooming and taking medication."  R. at 182, 184. Indeed, Mrs. Cline stated life "alone" would be "difficult" for Plaintiff.  R. at 225.

The ALJ also based his adverse credibility determination on Plaintiff's activities of daily living.  See R. at 855.  Specifically, the ALJ stated that "the record reveals numerous interests of [Plaintiff], including enjoyment of kites, going camping, doing crafts such as painting, reading, and playing card games with others on the computer," which the ALJ concluded were activities requiring "at least a basic level of concentration or memory."  R. at 855.  Although an ALJ may cite a claimant's inconsistent reports of daily activities, Smolen, 80 F.3d at 1284, the daily activities on which the ALJ relies in this instance do not support a finding that Plaintiff's allegations of cognitive and mood problems were not credible.

It is undisputed that Mrs. Chase stated she plays cards with Plaintiff once a day for approximately one to two hours.  R. at 163, 219.  The record, however, also shows that Plaintiff must be "reminded how to play . . . every 5-7 minutes."  R. at 206.  It is also undisputed that Plaintiff "goes on the Internet" to play cards.  R. at 1350.  The record, however, shows Plaintiff does this to "relax" when he cannot sleep during the night.  R. at 1350.  More important, the record is devoid of any indication of how well Plaintiff plays cards online or whether he engages in even the most basic level of concentration or memory necessary to play the online card games.

Finally, although the record shows Plaintiff "loves his crafts in the winter time," "paints window things," reads, and "likes flying kites," these activities simply do not discredit Plaintiff's

allegations of continuing cognitive and mood problems.  R. at 163, 219, 224, 930.  Additionally, although the record shows Plaintiff goes camping "twice a year," the record also shows that Plaintiff goes "with a group" for only one to two days at a time.  Moreover, nothing in the record indicates the level of concentration or memory required by Plaintiff when he is camping.  The activities on which the ALJ relies are not inconsistent with Plaintiff's allegations insofar as they relate to his cognitive and mood problems and do not support the ALJ's adverse credibility finding.

### B. Plaintiff's Pain Symptoms

The ALJ also improperly discredited Plaintiff's pain symptoms.  Here, the ALJ concluded Plaintiff's allegations related to his physical impairments were not credible because they conflicted with his activities of daily living.  R. at 854.  Plaintiff testified that he is able to stand for one to two hours, sit for one to two hours, walk for two to three blocks before his feet become numb, and carefully climb stairs.  R. at 854.  He also testified he experiences pain from his feet to his shoulders, including his back.  R. at 854.  Plaintiff further testified he has difficulty bending due to muscle spasms, cannot lift items from ground level, and experiences shoulder pain that makes it difficult to reach overhead.  R. at 854.

The ALJ concluded that despite Plaintiff's allegations of pain, Plaintiff testified he was able to do household tasks, do yard work, clean, prepare basic meals, and wash the car.  R. at 854.  The ALJ also reasoned Plaintiff has no "difficulty attending to his personal needs, is able to walk up to one-half mile, . . . rides his bicycle, and regularly plays cards and computer card games."  R. at 855.  The ALJ further reasoned Plaintiff "regularly attends [Alcoholics Anonymous ("AA")] meetings and counseling at the VA, and was performing volunteer work at

a thrift store as of October 2003, . . . [and] enjoys flying kites." R. at 855. The ALJ's reasons are not clear and convincing or supported by substantial evidence in the record.

Although Plaintiff stated he does housework, he also stated there are times that his pain prevents him from finishing his tasks. R. at 212. With respect to walking, Plaintiff stated that he "occasionally" walks up to one-half mile. R. at 213. Consistent with Plaintiff's statements, Mrs. Cline stated Plaintiff only takes walks "when his health allows." R. at 218. In addition, Mrs. Chase stated Plaintiff is able to walk one-half mile on "flat ground" and must rest "5 to 10 minutes" while walking. R. at 915, 1352.

With respect to meals, the record shows Mrs. Cline stated Plaintiff only "sometimes" prepares or helps to prepare meals. R. at 220. Mrs. Chase stated that Plaintiff only prepares frozen dinners and tuna sandwiches for himself. R. at 912. Plaintiff himself stated he can only prepare "very simple meals," including rice or potatoes, a can of soup, or cold cereal. R. at 928.

With respect to housework, Plaintiff stated he only does a "small amount of yard work" and simply "help[s] with vacuuming, laundry, cooking, [and] washing vehicle [sic]." R. at 928. Indeed, Mrs. Cline stated Plaintiff cannot do the household chores on his own and Plaintiff himself claimed he often has to rest when performing household activities. R. at 221, 1341, 1347.

While inconsistencies between a claimant's daily activities and his alleged impairments can serve as a basis for discrediting the claimant's subjective testimony, the ALJ may not selectively read the record as he does here. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ has a duty to fully and fairly develop the record). When viewed in its entirety, the record reveals Plaintiff's activities of daily living were very limited and many of the daily activities the ALJ relied on in support of his adverse credibility determination were not

inherently inconsistent with Plaintiff's allegations of pain, including his preparing of simple meals, assisting with housework, and occasional walks. Plaintiff's attendance at AA meetings, ability to ride his bicycle, and enjoyment of playing cards and computer games do not detract and are not inconsistent with Plaintiff's allegations of pain.

In sum, the ALJ's reasons supporting his adverse credibility finding are not clear and convincing or supported by substantial evidence in the record. The Commissioner makes no argument to the contrary. Considering all the evidence and viewing the record as a whole, the ALJ's adverse credibility finding cannot be sustained in this instance. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled."); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) ("[E]vidence that [claimant] could assist with some household chores was not determinative of disability. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.") (Quotation marks and citation omitted).

### C. Violation of Judge Marsh's November 19, 2007, Remand Order

Plaintiff contends the ALJ's adverse credibility finding violates Judge Marsh's November 19, 2007, remand order precluding the ALJ from applying a presumption of nondisability. I agree.

A review of the record shows that the ALJ discredited Plaintiff's subjective complaints, in part, because "there [was] no evidence that [Plaintiff's mental] condition . . . worsened." R. at 855. Suffice it to say, that Plaintiff's mental condition did not worsen would only be relevant to the ALJ's adverse credibility determination if the ALJ applied the presumption of continuing nondisability–for, if Plaintiff were undisputedly disabled within the meaning of the Act, then it would be of little consequence whether or not Plaintiff's mental condition worsened.

The ALJ also rejected Plaintiff's subjective statements because Plaintiff "agreed that as of November 1, 1999, he was able to sustain concentration and memory sufficient for the performance of simple, routine work activity with no exertional limitations, [yet] . . . reported that his cognitive and mental condition ha[d] not improved."  R. at 854.  The Commissioner, however, fails to cite any evidence–and I find none–showing that Plaintiff had "agreed he was able to sustain concentration and memory sufficient for the performance of simple, routine work activity with no exertional limitations."  R. at 854, 861-65.  The ALJ's statement is simply unsupported by the record.  For this additional reason, the ALJ's adverse credibility finding cannot be sustained.

**IV. Lay Witness Statements**

Plaintiff contends the ALJ improperly rejected the lay witness statements of his wife and mother-in-law.  Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  When "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, Mrs. Chase stated Plaintiff's mental and physical impairments cause him to isolate himself from others, lead to anxiety attacks, induce his depression, and cause his memory loss. R. at 71, 912-15, 1349-52.  Mrs. Chase also stated that Plaintiff's impairments limit his physical abilities, including bending, lifting, reaching, and squatting.  R. at 71, 912-15, 1349-52.  The

Commissioner concedes, and I agree, that the ALJ improperly rejected Mrs. Chase's lay witness statements on the basis that her statements were "[n]ot credible in light of the lack of medical evidence" corroborating her allegations.  R. at 858.  The Commissioner, however, argues that the ALJ's error was harmless because the ALJ also found Mrs. Chase was not credible based on the "numerous inconsistencies between [her] reports of limitation and claimant's daily activities." R. at 858.  Specifically, the Commissioner argues that the ALJ properly rejected Mrs. Chase's lay witness statements based on Plaintiff's ability to perform "household tasks, . . . yard work, cleaning, basic meal preparation, and washing the car."  R. at 854.  As discussed above, however, these activities are not inconsistent with Plaintiff's alleged symptoms when viewed in the context of the record as a whole.  For those same reasons, the activities on which the ALJ relies are also not inconsistent with Mrs. Chase's lay witness statements and accordingly, the ALJ improperly discounted Mrs. Chase's testimony.

The ALJ also improperly rejected Mrs. Cline's testimony.  Mrs. Cline stated Plaintiff has a "hard time coping," has "memory problems" and gets confused, can only do "simple chores," and is limited physically by pain.  See R. at 218, 224.  Mrs. Cline further stated that Plaintiff's "mental and physical abilities prevent[ed him] from working."  R. at 224.  The Commissioner asserts the ALJ properly rejected Mrs. Cline's statements because he relied on the fact that Plaintiff changes the oil in his car every two to three months, attended to his own personal needs, was able to walk up to one-half mile, rode his bicycle, regularly played cards and computer games, regularly attended AA meetings and counseling, and volunteered at Habitat for Humanity.  As discussed above, however, Plaintiff's ability to attend to his own personal needs, walk up to one-half mile, ride a bicycle, play cards and computer games, and attend AA meetings and counseling are not inconsistent with Plaintiff's testimony.  For those same reasons,

21 - OPINION & ORDER

the activities cited by the ALJ in this instance are also not inconsistent with Mrs. Cline's testimony.

With respect to Plaintiff's volunteer activities at Habitat for Humanity and changing the oil in his car, I conclude they do not conflict with Mrs. Cline's testimony. The record shows that pursuant to the recommendation by his VA counselor, Plaintiff volunteered at Habitat for Humanity where he "pick[ed] up chunks of wood," "help[ed] set things up," and "clean[ed] up." R. at 75-76, 1334. The record, however, shows Plaintiff only volunteered once a week for approximately four hours at a time. R. at 77. Mrs. Chase testified that Plaintiff's volunteer activities at Habitat for Humanity was "not like a regular job" because there was "no pressure" and because Plaintiff did not have "to do [things] a certain way." R. at 77. Plaintiff's limited volunteer activities at Habitat for Humanity are not inconsistent with Mrs. Cline's testimony. Rather, they are consistent with Mrs. Cline's testimony that Plaintiff cannot perform fulltime work on a sustainable basis, is unable to cope with pressure, and is limited by his mental and physical abilities. Clearly, volunteering approximately four hours a week in a position that involves "no pressure" and which is unlike a "regular job" is not necessarily inconsistent with Mrs. Cline's statements. With respect to changing the oil in his car, nothing in the record indicates how long it takes Plaintiff to perform this task or what changing the oil entails. Indeed, Mrs. Cline stated Plaintiff does not change the oil by himself and Mrs. Chase stated Plaintiff simply "adds oil to the car." R. at 164, 221-22.

Based upon my review of the record, the ALJ failed to provide germane reasons when rejecting the lay statements of Mrs. Chase and Mrs. Cline, and his error was not harmless. The ALJ's rejection of the lay witness statements cannot be sustained in this instance.

/ / /

**V.  Remand**

Plaintiff argues that because the ALJ's RFC assessment did not include all of his

limitations, the ALJ's vocational hypothetical to the VE was invalid.  He contends that under the

credit-as-true rule, the evidence establishes he is disabled within the meaning of the Act and as

such, he is entitled to an immediate award of benefits.  The Commissioner asserts that contrary to

Plaintiff's argument, improperly omitted lay witness statements are not automatically credited as

a matter of law.

The Commissioner's argument is inapposite.  A claimant's RFC must incorporate all

work-related impairments, both severe and non-severe.  20 C.F.R. § 404.1545(a)(2).  As

discussed above, the ALJ improperly rejected the VA's disability rating, Plaintiff's subjective

statements, Dr. Trueblood's opinion, and the lay witness statements of Mrs. Chase and Mrs.

Cline.  It follows that the ALJ's RFC assessment did not account for all of Plaintiff's limitations

and accordingly, the RFC is not supported by substantial evidence.  See, e.g., Lingenfelter, 504

F.3d at 1041 (an RFC is not supported by substantial evidence when the ALJ improperly

excludes pain symptoms from the RFC).  Because the hypothetical posed to the VE was based on

an erroneous RFC, the ALJ's determination that Plaintiff is able to perform jobs existing in the

national economy is not supported by substantial evidence and cannot be sustained.  See March

v. Comm'r of Soc. Sec. Admin., No. 10-35980, 2011 WL 6322394, at *2 (9th Cir. 2011)

("Because the RFC was defective, so were the hypothetical questions that the ALJ posed to

a[VE]. . . . The VE's testimony cannot constitute substantial evidence in such circumstances . . .

.") (Internal quotation marks omitted).

Turning to the credit-as-true rule, I previously stated in Slover v. Commissioner, Social

Security Administration, No. CV-10-258-HZ, 2011 WL 1299615, at *21 (D. Or. 2011) that the

"Ninth Circuit decisions . . . suggest that the application of the credit-as-true rule is encouraged, if not altogether mandatory."  See also Wilson v. Astrue, No. CV 09-6355-PK, 2011 WL 609801, at *11 (D. Or. 2011) ("Although I cannot resolve [the] disharmony, I note that Ninth Circuit decisions after Connett decline to endorse that case's flexible approach and instead frame the credit-as-true rule as encouraged, if not altogether mandatory.") (Citing Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009)).  Under the credit-as-true rule, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).  Suffice it to say, I would apply the credit-as-true rule in this instance even if the rule were completely discretionary because the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no outstanding issues that must be resolved before a determination of disability may be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if such evidence were credited.

Here, the VA's disability rating, Dr. Trueblood's opinion, Plaintiff's own statements, and the lay witness statements when credited as true establish that Plaintiff is disabled under the Act. Plaintiff testified that he is unable to remember things, including simple names and dates, and due to his impairments is unable to work forty-hour weeks.  R. at 63, 1335, 1365.  More important, consistent with the overall evidence in the record, the VA determined Plaintiff is "70 percent disabled" and "unable to secure and follow a substantially gainful occupation."  R. at 129.  In addition, Plaintiff himself testified that due to his pain, he has to lay down at

unpredictable times at least once or twice a day in approximately one-half hour to one hour

periods. R. at 93. The VE expressly testified that such a limitation would preclude competitive

employment. R. at 94. Because the ALJ would be required to find Plaintiff disabled were the

improperly rejected evidence credited as true, remanding for an award of benefits is appropriate

in this instance.

I find it noteworthy that a reversal of the Commissioner's decision and a remand of this

matter for the immediate award of benefits is supported for an additional reason. The Ninth

Circuit looks with disfavor on an ALJ's "heads we win, tails, let's play again" approach to

disability adjudications. See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citation

omitted). The Ninth Circuit has previously recognized that "[r]emanding a disability claim for

further proceedings can delay much needed income for claimants who are unable to work and are

entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the

outcome of their appeals and proceedings on remand.'" Id. (citation omitted). The Ninth

Circuit's concerns are particularly applicable here where this matter has dragged on for over

eleven years, has already been remanded for further proceedings, has gone through three separate

hearings, has been before two different United States District Court Judges, and must now be

remanded again because of the ALJ's legal errors. For this additional reason, I find that reversal

of the Commissioner's decision and a remand of this action for the immediate award of benefits

is proper.

/ / /

/ / /

/ / /

/ / /

25 - OPINION & ORDER

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is REVERSED and this matter is

REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and

award of benefits, and the Commissioner's motion to remand (doc. #34) is DENIED.

IT IS SO ORDERED.

Dated this <u> 21st</u>day of <u> March    </u>, 2012.


<u> /s/ Marco A. Hernandez</u>
MARCO A. HERNANDEZ
United States District Judge

26 - OPINION & ORDER